In Equity.

MATTHEW LAUGHLIN, Trustee,

vs.

ALPHONSO W. PAGE et als.

Penobscot.　　Opinion July 18, 1911.

*Trusts. Statute of Uses. Deeds. Recitals. Beneficiaries. Consideration. Death of Trustee. Estates Tail. Remainder. Reversion. Wills. Costs. Revised Statutes, chapter 79, section 30.*

A deed in trust for benefit of the grantor's daughter, vested the legal title in the trustee and an equitable fee simple in the daughter, depriving the grantor and his heirs of all interest in the property and its proceeds.

A deed in trust is not within the statute of uses, where the trustee has discretion to sell and manage the estate and invest the proceeds.

The beneficiaries of a trust, and persons claiming under them, are not bound by a recital in a deed to the trustee of land purchased with proceeds of the trust estate, that they consented to the inclusion of others as beneficiaries.

A trustee diverting property, as by taking a conveyance including other beneficiaries, must show clearly and satisfactorily that all parties consented.

Persons whose names are wrongfully and without consideration inserted in a deed as beneficiaries of a trust take no interest, and the trustee holds the property for the rightful beneficiaries.

A trustee having died without exercising a power to terminate the trust by conveying to the beneficiary, the legal estate descended to the trustee's heirs in trust; his executrix and residuary legatee taking no interest.

Where the holder, under a deed in trust, of an equitable fee simple, consented that an equitable remainder in estate tail effective on her death be conveyed to another, such remainder revested in the consenting beneficiary on predecease of the remainderman without issue, leaving the beneficiary the equitable owner in fee simple.

Title of trustees for an equitable owner in fee simple, under a trust which, by the terms of its creation, terminates at the death of such owner, is extinguished by the owner's death, vitiating subsequent appointment of a trustee.

An equitable owner in fee of trust property is entitled to devise the property free of the trust, which by the terms of its creation ceases at the death of such owner.

*Held:* That trust property was properly chargeable with the plaintiff's expense, and the costs on a bill in equity brought by him to settle the rights of the parties claiming an interest in the property.

In equity. On report. Bill sustained. Decree according to opinion.

Bill in equity brought by the plaintiff, Matthew Laughlin, of Bangor in the county of Penobscot and State of Maine, "Trustee of certain estate conveyed in trust for the alleged benefit of Mary E. Page, Jennie H. Page, Alphonso W. Page, Gertrude Simpson, Maude S. Smith, and Howard W. Simpson, under a deed from Frank W. Eastman to Aaron L. Simpson, dated March 28, 1895, recorded in Penobscot Registry of Deeds, Book 645, page 449, against Alphonso W. Page and Imogene P. Russell, both of said Bangor, and Gertrude Simpson of said Bangor, both individually and in her capacity as executrix of the last will and testament of Aaron L. Simpson, late of said Bangor, deceased testate, and Corelli C. W. Simpson of said Bangor, and Maude S. Smith of Rockland, in the county of Knox, in said State, and Grey Simpson De La Mater of Evanston, in the State of Illinois, the only child and only heir at law of said Howard W. Simpson, said last-named being a minor under the age of twenty-one years, and Frank H. Monks of Boston, in the Commonwealth of Massachusetts, Louisa D. Hempel of Dresden, Germany, George H. Monks of said Boston, and Robert H. Monks of Wellesley, in said Commonwealth of Massachusetts." Answers were filed by the several defendants. At the conclusion of the hearing before the Justice of the first instance, the case was reported to the Law Court "upon bill, answers and admissions," for determination.

The case is stated in the opinion.

*Matthew Laughlin,* pro se.

*Thompson & Blanchard,* for Gertrude Simpson, Corelli C. W. Simpson, and Maud S. Smith.

*George H. Worster,* for Alphonso W. Page.

*Edgar M. Simpson,* for Imogene P. Russell.

*Milton S. Clifford*, for Frank H. Monks, Louisa D. Hempel, George H. Monks, and guardian ad litem of Robert H. Monks.

*Bingham, Smith & Hall of Boston*, associate solicitors.

*Wm. P. Thompson*, guardian ad litem of Grey Simpson De La Mater.

SITTING: EMERY, C. J., SPEAR, CORNISH, KING, BIRD, HALEY, JJ.

HALEY, J. 1. This is a bill in equity in which the plaintiff asks that he may be authorized and directed to sell and convey, and give sufficient deed or deeds of a certain parcel of real estate, alleged to be held in trust by him, and to safely invest the proceeds thereof or dispose of the same as directed by this court.

2. That this court will determine whether or not said plaintiff, as trustee, shall use the proceeds obtained by him from such sale of said real estate for the support and maintenance of Alphonso W. Page, the widower of Mary E. Page, during his lifetime, before he uses for that purpose any of the property bequeathed by the will of Mary E. Page to the plaintiff, in trust.

3. That the court will determine whether the provisions in the trust deed mentioned in the bill gives to the defendants, Gertrude Simpson, Maud S. Simpson and Howard W. Simpson, any interest in the trust property, and what rights, if any, the defendants in this bill, or their heirs, now have, or shall have, in said trust property at the decease of said Alphonso W. Page.

On March 9, 1874, Nathaniel Hatton conveyed certain real estate in Bangor to Delia S. Monks. The conveyance was absolute on its face, but was admitted by said Monks to be in trust for the benefit of the grantor's only daughter, Mary E. Page. In 1880 the creditors of the grantor brought a bill in equity against said Monks for the purpose of having the conveyance set aside on the ground that it was fraudulent as to creditors. Said Monks made answer to the bill, stating in her said answer that there was no fraud, and that the conveyance was in trust for Mary E. Page. In that action judgment was rendered for the defendant.

July 28, 1881, with the written consent of said Hatton and said Mary E. Page, said Monks quitclaimed all her interest in said real

estate to Aaron L. Simpson, of said Bangor, and his heirs, by deed containing the following clause : "This conveyance is made to said Simpson, in trust, and he and his heirs are to hold the same in trust for the use and benefit of my niece, Mary E. Page of said Bangor, for whose use and benefit said conveyance was made to me, and this conveyance is made to said Simpson at her request, and said Simpson, as such trustee, is hereby fully empowered and authorized at his discretion to sell and convey the premises herein described, in fee, to such person, and for such consideration and on such terms as he may see fit, and invest the proceeds of such sale in such manner and upon such terms as he may deem for the best interest of all concerned. Said trustee is also hereby authorized and empowered at any time he may see fit to convey said property and the proceeds of the same which may be held by him at any time by virtue of this trust, and as such trustee, execute all proper deeds and papers therefor, to the said Mary E. Page upon such terms, and conditions as he may see fit, and deem just and proper.

"If the said Mary E. Page shall die before such conveyance shall be made to her, then said trustee may convey said estate, or the proceeds thereof, in like manner and with like conditions to Jennie H. Page, and the heirs of her body, the said Jennie being the daughter of said Mary E. Page. Upon any such conveyance to said Mary E. Page or to said Jennie H. Page this trust shall cease. No responsibility shall rest upon or attach to said trustee as to the care and management of any of such property, when the same may be occupied by the said Mary E. Page, or the said Jennie H. Page or under either of their control.

"In the event of the death of the said Mary E. Page before a conveyance shall be made to her of the estate or the proceeds thereof, as aforesaid, then in place of conveying to said Jennie as aforesaid the said Simpson may at his discretion hold the said estate or the proceeds thereof in trust for the said Jennie H. Page and the heirs of her body in the same manner and with like conditions as he is hereby directed to hold the same for the said Mary E. Page."

In 1895 said Nathaniel Hatton died intestate, leaving no widow and leaving as his only heir at law said Mary E. Page, his only

child.    Said Delia S. Monks is dead, leaving no husband and as her only heirs at law the defendants Frank H. Monks, Louisa D. Hempel, George H. Monks and Robert H. Monks.

Aaron L. Simpson held the property as trustee up to March 28, 1895, when he sold it to Minta F. Brown, under the power of sale granted him in the deed conveying the property to him, and on the same day, with the proceeds of said sale, he bought of Frank W. Eastman other real estate in Bangor, being the premises now in question.  The Eastman deed was "in consideration of $2800 paid by Aaron L. Simpson of Bangor in the County of Penobscot and State of Maine as trustee of Mary E. Page."

It is admitted that said Mary E. Page and Jennie H. Page had no knowledge of the change attempted to be made in the terms of the trust by inserting the names of Alphonso W. Page, Gertrude Simpson, Maud S. Simpson and Howard W. Simpson as beneficiaries under said Eastman's deed, and never consented thereto, unless the clause in the deed that it was done with their consent can be construed as knowledge and consent upon their part.

On February 7, 1901, said Aaron L. Simpson died, leaving the will set forth in plaintiff's Exhibit D, wherein, after disposing of certain property with which we are not concerned, he gave all the rest and residue of his estate to his wife, Corelli C. W. Simpson, for her life, with power to dispose of the same for her support, and then gave whatever remained of same at his wife's death to his daughter, Gertrude Simpson.

In March, 1910, said Jennie H. Page died, unmarried and without issue, leaving said Mary E. Page and Alphonso W. Page, her mother and father, as her only heirs.

In August, 1910, said Mary E. Page died testate, by her will giving all her property to the plaintiff, Matthew Laughlin, in trust, to use the same, principal and interest if needed, for the support of said Alphonso W. Page during his lifetime, with a gift over, at the death of said Alphonso, of all her said property then remaining to the defendant, Imogene P. Russell, absolutely and free from said trust.

Howard W. Simpson died intestate before February 7, 1901, and the defendant Grey Simpson De La Mater is his only child and only heir.

On the sixth day of December, 1910, the Probate Court for the County of Penobscot, under the provisions of chap. 70, R. S., duly appointed the plaintiff trustee to succeed said Aaron L. Simpson under the provisions of the deed of Frank W. Eastman to said Aaron L. Simpson, which trust the plaintiff duly accepted.

The rights of the parties can best be determined by ascertaining their rights under the deeds in the order in which they were given. The deed of Nathaniel Hatton conveyed to Delia S. Monks his entire estate in the property mentioned in the deed; it conveyed the same to her in fee simple. At the time of the conveyance there was an agreement between Nathaniel Hatton and Delia S. Monks that the property should be held by said Delia S. Monks in trust for Mary E. Page, the grantor's daughter. The validity of the trust was established by proceedings in court, wherein the creditors of said Hatton attacked its validity, and the trust was upheld. It was also recognized by Delia S. Monks in her deed of the same property to Aaron L. Simpson.

The property having been conveyed to Delia S. Monks in trust for the benefit of Mary E. Page, and there appearing to be no conditions attached to the trust whereby said Hatton retained any interest in the property, Delia S. Monks held the legal title, in trust, and Mary E. Page held an equitable fee simple in the trust property with the right to the entire beneficial interest therein.

By the conveyance Nathaniel Hatton parted with all his interest in the property, and neither he nor his heirs had or have any claim to the property conveyed by him to said Delia S. Monks, or to the property purchased with the proceeds thereof.

Mary E. Page, being the equitable owner in fee simple of the property described in the Hatton deed, gave her written consent that Delia S. Monks, the trustee, should convey her title in the trust property to Aaron L. Simpson as trustee. This agreement was assented to by Nathaniel Hatton.

On July 28, 1881, in pursuance of the agreement, Delia S. Monks conveyed the property, in trust, to Aaron L. Simpson. That conveyance was made with conditions inserted in the deed which operated to convey to Jennie H. Page certain rights in the trust property. By that deed an equitable remainder in estate tail was conveyed to Jennie H. Page, and Mary E. Page held an equitable estate for life with remainder to herself, or her heirs, in fee upon the death of Jennie H. Page without heirs of her body.

The equitable estate of Jennie H. Page was granted by Mary E. Page from her equitable estate in fee simple, although Mary E. Page was not the grantor in the deed which conveyed the interest to Jennie H. Page, but Mary E. Page was the equitable owner in fee simple before the deed was executed, and she consented that the deed might be executed in the manner in which it was executed, and thereby she became the donor of the equitable remainder granted by deed of Delia S. Monks to Aaron L. Simpson. Neither Nathaniel Hatton's nor Delia S. Monk's interest contributed in any degree toward the equitable remainder in tail.

Delia S. Monks, being the holder of the legal title in trust, conveyed the property to Aaron L. Simpson in trust, and thereby divested herself of all title to the property, and neither she nor her heirs had or have any rights in the property conveyed by her to Aaron L. Simpson, as trustee, or in the property purchased by him with the proceeds of that property.

By the Monks conveyance Aaron L. Simpson took the legal title to the property mentioned in the Hatton deed, Mary E. and Jennie H. having an equitable interest therein. The conveyance was not within the statute of uses, as by the deed the trustee was to exercise his discretion in the sale and management of the estate and in the investment of the proceeds. Pomroy Eq. Juris. sec. 984; Perry on Trusts, sec. 305.

March 28, 1905, Aaron L. Simpson, under the powers granted him in the Monks deed, sold the trust property and with the proceeds purchased the property in dispute from Frank W. Eastman, the consideration named in the deed being $2800. The conveyance purported to be in trust for the use and benefit of Mary E. Page,

and granted to Mary E. and Jennie H. Page the same interest in the property which they had in the property conveyed by Monks to Simpson, but for the following clause :

"If the said Mary E. Page and Jennie H. Page shall both die leaving no heirs of the body of said Jennie H. Page and shall leave Alphonso W. Page living, who is the husband of said Mary E. Page and the father of said Jennie H. Page, then the said trustee shall, out of the estate, if there is sufficient, give a good support and maintenance to the said Alphonso W. Page in such manner as he, said Trustee, may deem just and proper.   It is intended that said premises shall be occupied by said Mary E. Page and said Jennie H. Page and while they are occupied by them, no responsibility is to rest upon or attach to said Trustee as to the care and management of said premises, and they are to have the full management and control of the same while they or either of them may occupy the premises.   If the said Mary E. Page and the said Jennie H. Page shall both die leaving the said Jennie H. Page unmarried and without heirs of her body, then after the death of said Alphonso W. Page, said Trustee shall turn over and convey to his three children in equal shares, viz:   Gertrude Simpson, Maud S. Smith and Howard W. Simpson and their heirs and assigns forever, then this trust shall cease.   This conveyance is made to and accepted by said Aaron L. Simpson under said conditions at the special instance and request of said Mary E. Page and Jennie H. Page, and with their full knowledge."

The above clause, if valid, conveyed to Alphonso W. Page and the children of Aaron L. Simpson an interest in the property, neither of whom had any interest in the property conveyed by Monks to Simpson, and with the proceeds of the sale of which the Eastman property was purchased.   It is claimed that Simpson, without the consent of Mary E. and Jennie H. Page, had no right to cause the names of Alphonso W. Page and the children of Aaron L. Simpson to be inserted in the deed, or to invest the trust fund so that any one other than Mary E. Page and Jennie H. Page would have any interest in the property, and that the interests of the said

Mary E. Page and Jennie H. Page under that deed should have been the same as were their interests in the property conveyed by Monks to Simpson.

This is admitted, but it is claimed that Mr. Simpson had their consent to take a conveyance of the Eastman property in the manner in which it was taken. It is admitted in the printed case that there is no evidence of their consent, except as it may be presumed from the trust deed of Eastman to Simpson. There being no evidence of their consent, the question arises, is the recital in the deed to the effect that they consented to the change evidence of their consent?

Mary E. and Jennie H. Page did not, and the trustee and legatee of Mary E. Page does not, claim the property under the Eastman deed. The interest of Jennie H. Page was created by the deed of Monks to Simpson from the property conveyed by Hatton to Monks. The interest of Mary E. Page was created by the deed of Hatton to Monks, out of which estate so granted was taken the interest conveyed to Jennie H. Page by deed of Monks to Simpson, and their interests were sold by Simpson, he having the right to sell, and Mary E. and Jennie H. Page had the same interest in the proceeds of the sale as they had in the property sold; it was their trust fund, and their claim to the Eastman property was because their trust fund, consisting of the property mentioned in the Monks deed, paid for the property conveyed by the Eastman deed. As said by the Court in *Land Co.* v. *Lewis*, 101 Maine, page 102, "the plaintiff's right does not arise from an express trust or from a resulting trust, but because the money which went into the farm was itself trust money. If so, they are charged with the trust." The same rule is laid down in *Cobb* v. *Knight*, 74 Maine, 253. The trustee and legatee of Mary E. Page claim by title anterior to the date of the Eastman deed which contains the recital. Parties and privies are bound by the recital in deeds under which they claim, but the estoppel does not bind strangers or those who claim by title paramount to the deed. "It is laid down, generally, that a recital of one deed in another binds the parties and those who claim under them. Technically speaking it operates as an estoppel, and binds parties and privies; privies in blood, privies in estate, and privies in

law. But it does not bind mere strangers, or those who claim by title paramount to the deed. It does not bind persons claiming by adverse title, or persons claiming from the parties by title anterior to the date of the reciting deed." *Carver* v. *Jackson*, 4 Pet. 1.

The same question was before the same court in *Crane* v. *The Lessee of Morris et al.*, 6 Pet. 598, and the court said on the same question : "As upon a deliberate review we are entirely satisfied with the opinion and judgment pronounced on that occasion (which was indeed most thoroughly and anxiously considered) we do not propose to go at large into the reasoning now." The same doctrine was recognized in *Derry Lessee* v. *Cray*, 5 Wall. 805, and in *Stockley* v. *Cissna*, 119 Fed. Rep. 812. There are many cases in which the above doctrine is recognized, and which fully sustain the rule as laid down by this court in *Davis* v. *Callahan*, 78 Maine, 313, in the following language : "Further than this, estoppels are not only binding upon parties, but upon privies ; privies in blood, as the heir ; privies in estate, as the feoffee, lessee, etc ; privies in law, as those upon whom the law casts the estate. Co. Litt. 352, a ; 1 Gr. Ev. 23 ; *Carver* v. *Jackson*, 4 Pet. 83 ; *Crane* v. *Morris*, 6 Pet. 611. They are not binding upon strangers, nor upon those claiming by title paramount to the deed or instrument creating the estoppel."

The above authorities clearly establish the proposition that Mary E. and Jennie H. Page, or the trustee or legatee of Mary E., are not bound by the recital in the deed that Mary E. and Jennie H. Page consented to the insertion in the Eastman deed of the names of Alphonso W. Page, or the children of the trustee, as beneficiaries of said trust after the death of Mary E. and Jennie H. Page.

When a trustee diverts property held by him in trust, he must be able to prove, by clear and satisfactory evidence, that all parties interested in the trust consent thereto. He stands in a fiduciary capacity to the cestui que trust, with authority to execute the trust, but with no authority to change or divert it. A trustee has no right to take a conveyance of property purchased with trust funds with the name of any person therein as a beneficiary other than the

cestui que trust of the trust fund, without the consent of the cestui que trust, and if he does so, the person whose name is so inserted takes no interest by the conveyance.

The names of Alphonso W. Page and the children of Aaron L. Simpson having been wrongfully inserted in the Eastman deed, without consideration, no interest in the trust property passed to them, and the trustee, Aaron L. Simpson, held the legal title to the property upon the same conditions, for the same purposes and for the same parties as mentioned in the Monks deed to him.

Aaron L. Simpson held the legal title to the property described in the Eastman deed to the time of his decease, February 7, 1901, for the benefit of the said Mary E. and Jennie H. Page as their rights were fixed by the Monks deed to him. That deed provided that said Simpson might convey the trust property to Mary E. Page, and thereby terminate the trust; but having died before making a conveyance, the legal estate followed by the trust descended to his heirs in trust, and his executrix and residuary legatee took and have no interest in the premises. *Richardson* v. *Woodbury*, 43 Maine, 210; *Abbott, Pet.*, 55 Maine, 580; *McClellan* v. *McClellan*, 65 Maine, 500. His heirs held it for the same purpose and upon the same conditions as Aaron L. Simpson held it, and continued to so hold it until August, 1910, when Jennie H. Page died without heirs of her body. Her interest during her lifetime was an equitable remainder to her and the heirs of her body. She having died without issue of her body before Mary E. Page, who was the donor to her of the equitable remainder, which was not to take effect until after the death of Mary E. Page, the equitable remainder determined and revested in the donor, Mary E. Page, and she thereby became the equitable owner in fee simple of the property mentioned in the Eastman deed. "Estates tail are estates of inheritance, which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and, upon the extinction of such issue, the estate determines." 1 Wash. Real Prop. 5th ed. 72, 73.

Mary E. Page, after the death of Jennie H. Page, being the equitable owner in fee simple with the sole beneficial interest in the property, continued to use and occupy it until her death. The heirs of Aaron L. Simpson held the legal title to the property described in the Eastman deed up to the death of Mary E. Page; they held it for her benefit, and no other person had any beneficial interest therein. The trust was created for her benefit, and at her death the objects for which the trust was created were satisfied, and the estate of the trustees failed and their title became extinct by operation of law, as there was no other act that could be done in furtherance of the purposes for which the trust was created. *Doe* v. *Considine*, 6 Wall. 458; *Young* v. *Bradley*, 101 U. S. 782; 4 Kent Com. 233.

The objects of the trust having been satisfied, Mary E. Page the cestui que trust having died, there being no further act that the heirs of Aaron L. Simpson, as trustees, could do in furtherance of the objects of the trust, and the trust having become extinct by operation of law, the plaintiff, Matthew Laughlin, took no interest in the property mentioned in the Eastman deed by virtue of his appointment as trustee on the sixth day of December, 1910, by the Probate Court for the County of Penobscot. By the terms of the will of Mary E. Page, all her property was given in trust to the plaintiff Laughlin, with full power to sell and convey without license of court, the whole or any part of her real estate, and to give sufficient deed or deeds thereof, the entire estate to be held for the sole benefit of Alphonso W. Page during his lifetime, and upon the death of said Alphonso all of the estate remaining should become the absolute property of Imogene P. Russell. By the terms of her will the Eastman property, as well as all other property owned by her at her decease, was transferred to the plaintiff Laughlin, in trust, with remainder over to Imogene P. Russell.

In *Chauncey* v. *Salisbury*, 181 Mass. 516, the will contained the following clause: "The sum I bequeath to William Salisbury and the sum I bequeath to Sam Salisbury I wish put in trust to Elihu Chauncey, and they shall have the income." The court ruled that at the death of Sam the trust ceased, and the property

then being a part of his estate should be distributed as such.    In *Hayward* v. *Rowe*, 190 Mass. 1, the testator left $500 to his housekeeper, "to be in trust of my executor and put in savings bank, the income to be paid to her yearly, and the executor can draw this money, and buy a cheap place for her to occupy during her life, if he thinks it would be for her good."    The court ruled in that case that, "during her lifetime the housekeeper was vested with an absolute equitable title, and although the legal title was in the trustee this did not limit or diminish her interest.    Upon her death, the trust having been fully executed, the legal title followed the equitable title, and the fund became part of the assets of her estate."

In *Holcomb* v. *Palmer*, 106 Maine, 17, there was a bequest whereby one-fifth of the remainder of the estate of the testator was to be held by Francis in trust for Clinton, to be used for his comfort and necessities, according to the discretion of Francis.    In that case the court said : "The fair and true construction of this residuary clause therefore is that four of the children received their shares absolutely or in fee simple, and Clinton received his share in equitable fee simple or a fee simple in trust, the legal estate passing to the trustee Francis, the beneficial interest to the cestui que trust Clinton, and the trust terminating at the farthest at the death of Clinton, when any portion of the trust left would pass by his will, if he died testate, or descend to his heirs if he died intestate." See also *Stone* v. *McLain*, 102 Maine, 168 ; *Doe* v. *Considine*, and *Young* v. *Bradley*, supra.

These authorities demonstrate that Mary E. Page had a right to devise the property mentioned in the Eastman deed by will, free from the trust mentioned in the Monks deed to Simpson and the Eastman deed to Simpson ; that it, with her other estate, passed by her will to Matthew Laughlin, the trustee named therein, to be held and used by him according to the trust created by her will, no construction of which is asked by the bill in this case.

This bill should be amended before filing the decree by making the plaintiff, Matthew Laughlin, as trustee under the will of Mary E. Page, a party, then all parties having any interest in the estate

of Mary E. Page, or any interest in the property mentioned in the Eastman deed and the Monks deed, will be parties to this proceeding, and their rights finally determined.

The heirs of Aaron L. Simpson having no title to the Eastman property, it is unnecessary for them to execute a release of the property in question. A decree drawn in accordance with this opinion and recorded in the Registry of Deeds, as authorized by sec. 30, chap. 79, R. S., will remove all cloud from the title that might be caused by the record of the trust deed. This bill having been brought to settle the rights of all the parties claiming an interest in the property, it is just that the property should bear the plaintiff's expense, and he is authorized to charge the trust property held by him under the will of Mary E. Page the sum of seventy-five dollars and taxable costs.

*Bill sustained with costs. Decree in accordance with this opinion.*