ST. PAUL ELECTRICAL WORKERS WELFARE FUND AND OTHERS v. ROBERT A. CARTIER.

182 N. W. (2d) 187.

December 4, 1970—No. 42300.

*Felhaber, Larson, Fenlon & Vogt, Thomas M. Vogt, Charles F. Bisanz, Robins, Davis & Lyons,* and *Stanford Robins,* for appellants.

*Kelley & O'Neill, James C. O'Neill, Torrison & Driscoll,* and *Mandt Torrison,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rosengren, JJ.

ROGOSHESKE, JUSTICE.

Appeal from a judgment ordering appellants to pay respondent-intervenor's attorneys' fees and litigation expenses in the sum of $18,154.44, plus interest. The issue presented is whether the trial court abused its discretion in awarding that amount from a labor-management negotiated trust fund to an individual beneficiary who incurred these expenses by reason of his unsuccessful efforts to oppose a statutory petition by the trustees seeking court approval of a transfer of trust assets. Under the peculiar circumstances of the case, we find no abuse of discretion and are constrained to affirm the judgment.

The issue is before us for the second time. Intervenor contested transfer of certain trust assets from the St. Paul Electrical Workers Welfare Fund to the St. Paul Electrical Construction Pension Fund, claiming that the transfer was in contravention of the trust agreement and unauthorized by law. In St. Paul Elec. Workers Welfare Fund v. Cartier, 283 Minn. 212, 167 N. W. (2d) 131, we affirmed the trial court's approval of the transfer but remanded the case because the trial court had denied intervenor attorneys' fees and expenses solely on the ground that

he was not a necessary party but merely a volunteer. We held that intervenor, who had a beneficial interest in the trust, was a necessary party and thus remanded for the trial court's "further determination as to whether appellant may be otherwise entitled to an allowance under the principles of the Atwood case." 283 Minn. 222, 167 N. W. (2d) 137. The background facts and procedural history leading to this appeal, except for matters hereinafter set forth, are fully set forth in our prior opinion.

In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736, is similar to the case decided today. In an action to secure a declaratory judgment as to the meaning and proper construction of an admittedly ambiguous trust instrument, plaintiff had unsuccessfully asserted claims against a testamentary trust. Atwood v. Holmes, 224 Minn. 157, 28 N. W. (2d) 188. Her attorneys' fees and expenses, however, were assessed against the trust. We affirmed that action, summarizing the appropriate rule as follows:

"* * * In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole." 227 Minn. 501, 35 N. W. (2d) 740.

Thus, the critical issues presented by the remand in this case were whether the intervenor's involvement in the litigation resulted in a benefit to the trust as a whole, and if so, what amount of attorneys' fees, costs, and disbursements should be allowed.

At a pretrial conference after remand, the parties entered into an agreement providing in part:

"That no issue of fact would be made as to the number of days or hours spent by [intervenor's] counsel in connection with the trial of this case, or the reasonable daily or hourly charge for such services. However, the [petitioners] will not admit that the total arrived at is a reasonable fee in this case under all the circumstances."

Upon the record and the parties' stipulation, the same court which tried this case on its merits found:

"That the intervenor was * * * a proper party to the proceedings, and that he acted in good faith, * * *.

"That as a member of the Welfare Fund he had an interest in the size of the reserve kept in the Welfare Fund * * *. That the value of the intervenor's interest and that of other members is problematical, but it might conceivably be very substantial.

"That there was ground for reasonable differences of opinion as to the regularity and advisability of decreasing the reserve in the Welfare Fund, and the litigation was with respect to substantial and material issues.

"That * * * there was a bonafide dispute as to the meaning of the language of the instruments, * * *.

"That, as a result of the litigation, all doubt as to the construction of the trust instruments with respect to the matters involved has been resolved, * * * and has, therefore, been of substantial benefit to the trust.

\* \* \* \* \*

"That a reasonable amount to be allowed to the intervenor from the Welfare Fund, by way of compensation for expenses and attorneys' fees in this litigation, is the sum of $18,154.44, consisting of the sum of $16,757.34 for attorneys' fees and expenses in the district court, and the sum of $1,397.10 for actual expenses in connection with the appeal."

The trial court's findings are clearly designed to conform to the principles set forth in Atwood, but appellants argue that no

benefit accrued to the trust fund from the litigation and that in any event, intervenor is not entitled to an allowance of attorneys' fees under the principles of the Atwood decision. They now seek reversal of the trial court's judgment or at least reduction of the amount awarded.

There is nothing in the record that persuades us that the lower court's finding that the litigation resulted in substantial benefit to the trust is in error. Having so found, the trial court then decided to award the full amount claimed. The only evidence on that issue consisted of the agreement quoted above and the judge's own observation of the character of the services performed by intervenor's counsel and the manner in which they were rendered. Certainly, the allowance is unusually generous and in most cases could not be allowed absent a showing that the benefits to the trust were commensurate with the award. As we said in the Atwood decision, the award of fees and expenses is not a matter of right but one of sound and cautious exercise of judicial discretion. But under the unusual circumstances of this case, we find no basis for reducing the trial court's award. To conclude otherwise would necessitate rejection of the lower court's view of the import of the parties' stipulation and would also require a determination based upon pure speculation, since no evidence to support a smaller award was submitted. Furthermore, the trial court has not supplied us with an explanation of the standard employed to measure the benefit to the trust. Indeed, the court's findings indicate that no precise method to measure benefit was discovered by the court or the parties. In light of that and the stipulation, we cannot say that the court abused its discretion.

We recognize, as urged by appellants, that a labor-management trust is not identical to a testamentary trust. The Atwood case involved a testamentary trust, and our decision extends the rule of Atwood to trusts negotiated by labor organizations and management. We are not persuaded that such extension is inappropriate. Although the two types of trust vary in some re-

spects, in so far as the question before the court is concerned the same policy considerations would appear to apply to both. In both situations there is merit in permitting beneficiaries to contest questionable use of trust funds without the prohibitive effect which would probably result if beneficiaries losing claims were always required to pay all fees and expenses. The guidelines established in Atwood remain stringent and sufficiently protect even the negotiated trust fund from unwarranted depletion. Until it is persuasively demonstrated that the labor-management trust should be distinguished from a testamentary trust in this regard, the rule may properly be applied in both situations.

Affirmed.