*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1839**

Michael J. Larkin,
Appellant,

Linda K. Larkin, et al.,
Plaintiffs,

vs.

Wells Fargo Bank, N.A.,
Respondent,

Susan Schulze Hoff, et al.,
Respondents,

Christina Larkin,
Respondent

**Filed October 6, 2014
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CV-10-4725

Eric Chiadikobi Anunobi, Eric Bond Law Office, PLLC, Minneapolis, Minnesota (for appellant)

Julian Cyril Zebot, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota (for respondent Wells Fargo Bank, N.A.)

Melanie Ann Full, Minneapolis, Minnesota (for respondents Susan Schulze Hoff, et al.)

Mark Valdemar Steffenson, Henningson & Snoxell, Ltd., Maple Grove, Minnesota (for respondent Christian Larkin)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

In this trust proceeding, appellant challenges the district court's award of attorney fees to respondents, arguing that (1) there is no legal basis for the award; (2) it was improper to order the fees to be paid solely from appellant's portion of the trust proceeds; and (3) the district court erred by failing to scrutinize the amount requested and by modifying the award in a second order. We affirm.

## FACTS

Decedent Robert Larkin established a revocable trust in 1997, which split into a marital trust and a residuary trust at his death in 2000; both trusts are administered for the benefit of his wife, Florence,[1] during her lifetime; after her death, the residuary trust will be administered for the benefit of the Larkin children and the marital trust will be administered for the benefit of the Larkin grandchildren. Appellant Michael Larkin is the son of Robert and Florence. Respondents Susan Schulze Hoff, Debra Lynn Schulze, Nancy Schulze Tellor, Richard V. Schulze (the Schulze beneficiaries), and Christina Larkin are some of the Larkin grandchildren.

After Robert's death, Florence and one of the Larkin children, Patrick, served as trustees, together with respondent Wells Fargo, N.A.(Wells Fargo),[2] as corporate trustee.

---

[1] Because several participants have the same last name, we will use first names.
[2] Wells Fargo is the successor to the original corporate trustee, Norwest Bank.

During the course of administering the trusts, a dispute concerning the sale of Ecolab stock arose between Wells Fargo and the beneficiaries of the trusts. Wells Fargo recommended selling the stock to diversify the trust portfolio; most of the beneficiaries opposed this, but Wells Fargo prevailed. After the sale, Ecolab stock posted large gains, which left the beneficiaries dissatisfied with Wells Fargo's performance. Following Patrick's death in 2008, Florence stopped communicating with Wells Fargo. Michael informed Wells Fargo by letter on May 19, 2009, that Florence refused to act any longer as trustee and that he would assume that role as her attorney-in-fact pursuant to a general power of attorney executed in 2002.

Wells Fargo filed petitions to remove Florence as trustee for non-cooperation, naming all the beneficiaries as parties. Michael, on his own behalf and as Florence's attorney-in-fact, sued Wells Fargo, alleging breach of fiduciary duties, negligence, and negligent misrepresentation. The amended complaint included as plaintiffs some of the grandchildren and Patrick Larkin's estate. After a partial summary judgment in favor of Wells Fargo, the district court ordered the parties to attempt to settle the remaining issues through mediation.

As a result of mediation, all of the parties, including Michael, initialed a hand-written settlement agreement in February 2011. The settlement agreement included the following terms: (1) all petitions, lawsuits, and objections were dismissed with prejudice; (2) Florence would resign as trustee; (3) a new corporate trustee would be appointed through a request-for-proposal (RFP) process; (4) Wells Fargo would continue to act as

trustee until appointment of a new trustee; and (5) any disagreements would be resolved through binding arbitration. Wells Fargo agreed to draft the formal settlement document.

The district court scheduled a status conference after several months elapsed with no executed agreement. Shortly before the May 25, 2011 hearing, Michael circulated an alternate settlement agreement, which included different terms. Because of the continuing dispute, the district court ordered the parties to engage in binding arbitration. On July 29, 2011, the arbitrator issued a binding arbitration award, which affirmed the Wells Fargo version of the settlement agreement and ordered Michael to pay two-thirds of Wells Fargo's attorney fees, either personally or as a deduction from his share of the trust. In November 2011, the district court denied Michael's motion to vacate the arbitration award, concluding that there was no statutory basis to vacate. Michael refused to sign the settlement agreement and moved to be dismissed as a party to the lawsuit. In January 2012, the district court denied this motion, removed Michael as Florence's attorney-in-fact for trust matters, and appointed a new attorney-in-fact for Florence. Michael appealed to this court, which, on September 17, 2012, affirmed the district court's removal of Michael as Florence's attorney-in-fact for the purpose of acting as trustee in her place, confirmed the settlement agreement, and affirmed the denial of Michael's motion to be dismissed from the lawsuit, but reversed the appointment of a professional attorney-in-fact for Florence in place of Michael. Michael's petition for review was untimely.

In January 2013, Wells Fargo and the other parties moved to enforce the settlement agreement and for attorney fees and costs. The district court held a hearing on

4

the motion on February 14, 2013.  The district court issued an order on May 8, 2013, confirming the settlement agreement, directing the parties to proceed with the RFP process to appoint a new corporate trustee, and granting attorney fees to Wells Fargo, the Schulze beneficiaries, and Christina Larkin, to be paid from Michael's portion of the trust.  The court ordered the parties to file "detailed billing records to support the . . . fee awards."  Billing records were submitted by Wells Fargo on May 22, 2013, by the Schulze beneficiaries on May 29, 2013, and by Christina Larkin on June 4, 2013.  The fee awards include legal services provided between the July 29, 2011 binding arbitration decision and the February 2013 motion hearing.

On July 29, 2013, the district court issued an order confirming the attorney-fee awards and modifying the amounts of the awards to reflect additional fees incurred for the motion hearing.  Michael appeals from the May 8 and July 29, 2013 orders.

## D E C I S I O N

### I.

Michael raises several issues that are not properly before this court on appeal. This appeal is from two district court orders that direct the parties to proceed with enforcement of a 2011 settlement agreement by engaging in an RFP process to select a new corporate trustee, remove Michael and Florence from the RFP process, and grant attorney fees to respondents.  Therefore, the issue of whether Michael may act as attorney-in-fact for Florence in trust matters is outside this court's scope of review because it was not before the district court at the February 2013 hearing and was definitively determined by this court in an earlier opinion.  *Larkin v. Wells Fargo Bank,*

5

*N.A.*, A12-0236 (Minn. App. Sep. 17, 2012). Similarly, Michael's objections concerning violations of the standards required for attorney-fee awards under Minn. Stat. § 549.211 (2012) are not before this court, because the district court did not rely on this statute in awarding attorney fees. Finally, the question of whether an order for attorney fees and costs violates the settlor's intent because of the trust's spendthrift clause was not raised below. *See Michaels v. First USA Title, LLC*, 844 N.W.2d 528, 532 (Minn. App. 2014) (limiting review to legal questions that were raised in and decided by the district court).

## II.

Michael raises four objections to the award of attorney fees: (1) in the absence of a statutory or contractual right to attorney fees, trust law permits only an award of costs, not attorney fees, and only if a party's actions are vexatious, litigious, immaterial, or trifling; (2) the district court improperly ordered the fees to be charged solely against Michael's portion of the trust; (3) the district court failed to scrutinize billing records before issuing its May 8 order; and (4) the district court improperly modified the award in its July 29 order.

The district court based its fee awards on trust-litigation case law: a district court, in its "sound and cautiously exercised discretion," may award a trustee attorney fees and costs that have been reasonably and necessarily incurred for the benefit of a trust as a whole. *In re Atwood's Trust*, 227 Minn. 495, 501, 35 N.W.2d 736, 740 (1949). Also, the court may award costs and attorney fees to any "necessary party who is acting primarily for the benefit of the estate." *Id.* But "[i]f the issues are immaterial or trifling, or if the conduct of a party is vexatious and litigious, or if he raises improper points, or in any way

6

creates unnecessary delay or expense, the court will not only refuse him costs and counsel fees but will order him to pay costs." *Id.*

We review the district court's attorney-fee award for an abuse of discretion; the district court's factual findings are reviewed for clear error and in the light most favorable to the findings. *In re Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012). The reasonable value of an attorney-fee award is a question of fact. *Id.*

Although *Atwood* refers only to an award of costs for vexatious or litigious conduct, this court has upheld an attorney-fee award granted after trust beneficiaries engaged in "burdensome litigation." *In re Trust of Hill*, 499 N.W.2d 475, 494 (Minn. App. 1993), *review denied* (Jul. 15, 1993). In *Trust of Hill*, the trust beneficiary sought to discharge the corporate trustee and appoint her children as trustees, despite lacking the authority to do so under the trust terms. *Id.* at 481. This court concluded that it was proper to charge the trustee's attorney fees against the portion of the trust benefiting the party who engaged in "burdensome, unnecessary, wasteful, and duplicative litigation" because the trustee's attorney fees and costs resulting from the litigation were "incurred in the ordinary course of administration of [the] trust." *Id.* at 493-94. This reasoning provides a basis for the district court's award of Wells Fargo's attorney fees.

A trust beneficiary who engages in litigation that confers a benefit upon the trust also may be entitled to reimbursement for attorney fees. *In re Great N. Iron Ore Props.*, 311 N.W.2d 488, 493 (Minn. 1981). A benefit is conferred on a trust when litigation aids "the development of clear and precise answers to questions" raised by the trustee that enable the trustee "to protect the interests of all beneficiaries." *Id.* The Schulze

7

beneficiaries and Christina Larkin benefited the trust by joining with Wells Fargo to enforce the settlement agreement and end litigation.

The district court's decisions are also supported by other authority. "[A] trustee who properly brings or defends a proceeding for the benefit of the trust estate may, in the process, properly incur any reasonable expense, including that of hiring an attorney. . . . [T]he trustee remains entitled to charge the estate with reasonable expenses, assuming the trustee was not personally at fault in causing the litigation." 3 Austin Scott et al., *Scott and Ascher on Trusts* § 18.1.2.4, at 1283-84 (5th ed. 2007). Similarly, a beneficiary whose efforts benefit the trust itself may be entitled to reimbursement of attorney fees in the court's discretion. *Id.* at 1292. Finally, "[i]f one beneficiary unsuccessfully tries, through litigation, to advance his or her own beneficial interest, the trustee may properly charge the resulting litigation expenses against the beneficiary's share." *Id.* at 1291.

The litigation here was an attempt to implement a settlement agreement that provides for appointment of a new trustee, something desired by the trust beneficiaries, and that will end costly litigation, thus benefiting the trust estate. The awards of fees to Wells Fargo, as trustee, and to the Schulze beneficiaries and Larkin are supported by the evidence, and the district court did not abuse its discretion by awarding attorney fees.

Michael argues that he was not engaging in "vexatious, litigious, immaterial or trifling" litigation, and he points to this court's reversal of the district court's appointment of a professional attorney-in-fact for Florence. But Michael's continuing attempt to undermine the settlement was not beneficial, particularly after the settlement agreement was confirmed in binding arbitration, by the district court, and by this court on appeal,

8

and his alternate proposed settlement agreement was nonsensical and included ad hominem attacks on other trust beneficiaries. The evidence supports the district court's finding that Michael engaged in vexatious and burdensome litigation.

Although Michael argues that the other beneficiaries supported the removal of Wells Fargo as trustee and, therefore, the fees should not be assessed only against his trust portion, the other beneficiaries agreed to abide by the settlement agreement and to participate in the RFP process; Michael alone chose to challenge the settlement agreement and continue the litigation. Under the reasoning in *Trust of Hill*, 499 N.W.2d at 494, this is sufficient to assess attorney fees against his portion. The attorney fees awarded were incurred only after a binding arbitration award was issued; none of the other trust beneficiaries contested this binding award. The district court's findings are not clearly erroneous and it was not an abuse of discretion for the district court to award attorney fees to Wells Fargo and the other beneficiaries, or to charge the fees against Michael's portion.

Michael also argues that the district court failed to scrutinize billing records before issuing its May 8 order and improperly increased the attorney-fee awards in its July 29 order. While the decision to award fees is subject to an abuse-of-discretion review, the reasonable value of the fees is a factual finding, which this court reviews for clear error. *In re Stisser Grantor Trust*, 818 N.W.2d at 507. A court should consider the following factors when awarding attorney fees: "(1) the character, ability and experience of the attorneys; (2) the responsibilities they assumed; (3) the difficulty of the issues raised; (4) the time, labor and skill required; (5) customary fees for similar services; (6) the

amount involved; and (7) the results obtained." *In re Great N. Ore Props.*, 311 N.W.2d at 493.

In connection with its effort to enforce the binding arbitration award, Wells Fargo submitted an affidavit with its motion for attorney fees that included a monthly breakdown of fees before the February 2013 hearing. The attorneys for Christina Larkin and the Schulze beneficiaries submitted similar affidavits. In its May 8 order, the district court provisionally granted respondents' attorney-fee requests but directed them to file within 30 days "detailed records to substantiate the fee numbers provided to the Court,"

In response to the district court's May 8 order, the parties submitted additional billing records that included detailed descriptions of services rendered through the February hearing. Although Michael argues that the district court should not have based its May 8 order on the original submissions, any errors or lack of information were corrected by the detailed billing records submitted by the parties upon which the district court based its final July 29 order. And it is proper that respondents be awarded their attorney fees for preparing for the hearing to enforce the settlement agreement; this hearing would not have been necessary but for Michael's refusal to abide by the agreement. The district court's findings are not clearly erroneous; there is substantial detail in the record that supports them.

**Affirmed.**